IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CURTIS F. SLATON, ESQ.        :

        Plaintiff,

    v.        :      Case No. 3:14-cv-269

STANDARD INSURANCE        JUDGE WALTER H. RICE
COMPANY,

        Defendant.        :

---

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD (DOC. #24);
SUSTAINING DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT
ON THE ADMINISTRATIVE RECORD (DOC. #26); JUDGMENT TO
ENTER IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF;
TERMINATION ENTRY

---

Plaintiff, Curtis F. Slaton, Esq., filed suit against Standard Insurance

Company, under the Employee Retirement Income Security Act of 1974 ("ERISA"),

29 U.S.C. § 1132(a)(1)(B), seeking judicial review of Standard's denial of his claim

for long-term disability benefits. The parties have filed cross-motions for judgment

on the administrative record. Docs. ##24, 26.

I.    **Background and Procedural History**

Curtis Slaton, an attorney, is a participant in an employee welfare benefit

plan (the "Plan") sponsored by his employer, governed by ERISA, and insured by

Defendant, Standard Insurance Company ("Standard"). The long-term disability

("LTD") portion of the Plan provides as follows:

> Until LTD Benefits have been paid for 24 months, you are Disabled if,
> as a result of Sickness, Accidental Bodily Injury, or Pregnancy, you are
> either:
>
> > a. Unable to perform with reasonable continuity the
> > material duties of your own occupation; or
> > b. Unable to earn more than 80% of your Indexed
> > Predisability Earnings while working in your own
> > occupation.

Doc. #20-1, PageID#227.

On December 4, 2012, Slaton submitted a claim to Standard for long-term

disability benefits. Doc. #20-3, PageID##474-87. On the claim form, he stated

that his last full day of work was December 31, 2011, and that he became unable

to work full-time at his occupation on January 1, 2012, due to multiple sclerosis,

which was diagnosed in January of 2012. Listed symptoms included "chronic

fatigue, weakness in legs, dizziness, balance problems, problems concentrating."

*Id.* at PageID#481.

In support of his claim, Slaton submitted a statement from his neurologist,

Dr. Michael Valle, dated December 12, 2012. Dr. Valle verified that Slaton had

been diagnosed with multiple sclerosis, had "excessive fatigue, gait instability,

dizziness, difficulty with concentration." The planned course of treatment included

follow-up testing and yearly appointments. Dr. Valle also recommended that

Slaton take Avonex and Nuvigil. When asked to describe Slaton's "physical,

mental and cognitive limitations and work activity limitations," Dr. Valle stated,

2

"Fatigues and tires easily, unable to sit or stand for long periods of time.

Decreased concentration." Doc. #20-2, PageID##400-401.

On December 26, 2012, Necole Feuerstein, a disability claim specialist with

Standard, interviewed Slaton over the phone. Slaton explained to her that he had

suffered from balance issues for many years. An MRI and a spinal tap eventually

led to a diagnosis of multiple sclerosis. He stated that, in addition to balance

issues, fatigue was his biggest problem. Slaton explained that he could work only

part-time and could no longer litigate. Doc. #20-3, PageID##458-59. His income

fell from $97,948.65 in 2011, to $30,930.36 in 2012. Doc. #20-4,

PageID##532-33.

Standard then obtained medical records from Dr. Valle, from Dr. Walter

Reiling, Slaton's family doctor, and from Dr. Myles Pensak, Slaton's neurotologist.

Dr. Valle first examined Slaton on January 26, 2011. Slaton reported that he had

first developed balance issues as a teenager, following multiple head injuries, and

had battled vertigo on and off for several years. This had eventually subsided, but

now he felt off balance again. Although Dr. Valle's neurological exam revealed no

substantial abnormalities, he referred Slaton to Dr. Pensak. Doc. #20-2,

PageID#394-96. Dr. Pensak's April 7, 2011, examination of Slaton was "entirely

unremarkable." He prescribed balance exercises and asked Slaton to keep a diary

of "exacerbators and mollifiers for his symptoms." *Id.* at PageID#366.

In May of 2011, Dr. Pensak referred Slaton for allergy testing, noting that

his diary indicated a "very clear correlation between exacerbation of

3

cochleovestibular symptomology and exacerbation of allergic diathesis." *Id.* at PageID#358. Dr. Allen Seiden, an otolaryngologist, suggested that Slaton avoid dust and mold, and take an antihistamine and a nasal steroid. *Id.* at PageID#354.

Slaton continued to have balance problems and, on November 30, 2011, Dr. Valle ordered an MRI. Test results showed "[s]cattered white matter signal alterations most compatible with demyelinating process such as multiple sclerosis," but there were "[n]o enhancing lesions to suggest active demyelination."[1] *Id.* at PageID#346. Dr. Valle examined Slaton again on January 19, 2012. Although Slaton continued to complain of balance issues, Dr. Valle concluded that "[t]he patient's neurological assessment is quite normal at this time. He does not relay any history convincing for relapsing remitting MS. I do not find any objective findings that would suggest a chronic progressive condition." Dr. Valle did order some additional testing, including a lumbar puncture. *Id.* at PageID#390-91.

On March 16, 2012, Sarah Dooley, Dr. Valle's physician assistant, examined Slaton. She noted that Dr. Valle had diagnosed multiple sclerosis based on the results of the MRI and the lumbar puncture. At that visit, Slaton reported "extreme fatigue," but otherwise stable symptoms. Dooley's physical examination

---

[1] Myelin is the protective coating that surrounds nerve fibers in the central nervous system. When an individual has multiple sclerosis, the body's immune system attacks the myelin, forming scar tissue and interrupting nerve impulses traveling to and from the brain. This process is known as demyelination. *See* http://www. nationalmssociety.org/What-is-MS/Definition-of-MS (last visited January 13, 2016).

4

revealed no abnormalities. She noted that Slaton's attention span and concentration were normal. *Id.* at PageID##387-89.

Dr. Valle saw Slaton again on March 27, 2012. At that time, Slaton reported that he was "fatigued with intermittent poor focus and endurance. Sleeps a lot. No new focal or lateralized symptoms. Cannot work effectively for a full day. Doesn't believe he can keep up with the pace and stress of his position. Falling behind in case load beyond the point that will would [sic] sustain the practice." Despite these complaints, Dr. Valle indicated that Slaton's concentration and attention span were normal. No physical abnormalities were found. Dr. Valle ordered another MRI to determine whether the demyelinating disease was progressing. *Id.* at PageID##384-86.

On June 8, 2012, Dr. Valle noted that the follow-up MRI again "shows signal abnormality consistent with MS without signs of active demyelination." *Id.* at PageID#382-84. Although this physical examination revealed that Slaton had an "unsteady casual gait mild and abnormal Romberg's test mild," Dr. Valle noted that Slaton's "symptoms have not changed drastically over the past several years." Although Dr. Valle recommended Nuvigil to combat the fatigue, Slaton was "resistant to medications" and said that he would simply try to get more sleep. Again, Dr. Valle found Slaton's concentration and attention span to be normal. *Id.* at PageID#383.

Dr. Valle next examined Slaton on December 12, 2012. Another MRI, performed in November of 2012, was "consistent with demyelinating disease

5

which was unchanged over his study in March." Slaton denied any new neurologic symptoms, but had "continued fatigue and gait instability." Slaton's concentration and attention span were again noted to be normal. *Id.* at PageID##380-82.

In February of 2013, Dr. Michele Mass, a Board-certified neurologist, reviewed Slaton's medical records on behalf of Standard, in connection with the long-term disability claim. Doc. #20-1, PageID##306-10. She noted that Slaton had been treated for disequilibrium since he was nineteen years old, likely due to multiple head injuries. He had also been treated for end stage Meniere's disease, an inner ear condition. She agreed that the MRI and the presence of oligoclonal bands in the spinal fluid supported a diagnosis of multiple sclerosis, but noted that the report failed to indicate how many oligoclonal bands were found.

Dr. Mass noted that, although Slaton had numerous subjective complaints, no objective abnormalities had been found. Her report states that Dr. Valle acknowledged Slaton's complaints of fatigue, decreased concentration, and inability to sit or stand for long periods of time, but "Dr. Valle did not comment on having recommended that the claimant cease work." Slaton's neurologic examinations were largely normal. Although Slaton complained of weakness in his legs, all examinations revealed normal motor strength and, although his gait was mildly unsteady, he was able to ambulate independently. Dr. Mass noted Slaton's other subjective complaints, but stated that she was unable to identify any "specific limitations or restrictions" from the medical records. *Id.*

6

Standard also consulted a Vocational Case Manager, who determined that Slaton's occupation was a sedentary one, which involved sitting most of the time, but required high levels of cognition and critical thinking. Doc. #20-3, PageID##488-95.

On March 14, 2013, Standard denied Slaton's claim for long-term disability benefits, concluding that he did not meet the Plan's definition of "disabled." *Id.* at PageID##443-48. Standard recounted, at length, Slaton's medical history as recorded by Dr. Valle, Dr. Reiling, and Dr. Pensak. It then discussed Dr. Mass's review of Slaton's medical records, and her conclusion that, despite the fact that Slaton had been diagnosed with multiple sclerosis, his medical records did not adequately support his stated level of impairment. Standard noted that Dr. Valle had found no "significant progression of neurologic dysfunction" and had not yet recommended any specific treatment. *Id.* at PageID#446.

Based on its review of Slaton's medical records, Standard concluded that at no point did the medical documentation support limitations or restrictions that prevented him from performing with reasonable continuity the material duties of his own occupation. Standard also concluded that, although Slaton's income decreased significantly in 2012, the medical records did not support a finding that this was the result of a Sickness or Accidental Bodily Injury. *Id.* at PageID#447.

Slaton timely appealed the denial of his claim for long-term disability benefits. In his appeal letter, he stated that his claim was based, not on his problems with lack of balance, but on "chronic fatigue and inability to concentrate

7

and focus on complex matters for any duration of time." He noted that he had suffered from imbalance issues for a long time, and had been able to compensate for them. Slaton stated that chronic fatigue, loss of energy, and inability to concentrate were his chief complaints as early as December 6, 2010, when he visited Dr. Reiling. He further claimed that his inability to work full-time was causing him great financial stress, which was contributing to his fatigue. Doc. #20-1, PageID##302-03.

In support of his appeal, Slaton offered a letter from Dr. Valle. In response to the question raised in Dr. Mass's report, Dr. Valle first clarified that Slaton had more than five oligoclonal bands in his spinal fluid; zero to one is normal. Dr. Valle also indicated that the concerns raised by Standard in its denial letter appeared "to reflect a lack of knowledge of the actual disease process." He explained that 70 percent of individuals with multiple sclerosis start with "intermittent flare ups of neurologic symptoms, usually in the form of physical deficits," but that cognitive impairment "occurs in up to half of all multiple sclerosis patients early in the disease," impacting their "ability to function on a day-to-day basis." He indicated that there can be a "slow accumulation of neurological dysfunction." *Id.* at PageID##304-05.

Dr. Valle stated that Slaton's complaints of cognitive impairment were consistent with these statistics, and that such symptoms "have interfered with his ability to function effectively in his capacity as an attorney." *Id.* Dr. Valle explained that debilitating fatigue among patients with multiple sclerosis is also

8

common and "very difficult to quantify." He explained that there is no correlation between the degree of fatigue and the severity of the motor disabilities. He opined that fatigue had "limited Mr. Slaton in his ability to function in the workplace . . . and in combination with cognitive impairment has greatly diminished his capacity to function as an attorney." *Id.*

In connection with the appeal, Standard submitted Slaton's claim file to Dr. Sergio Loaiza, another board-certified neurologist. *Id.* at PageID##283-98. In his report, Dr. Loaiza summarized Slaton's medical records from Dr. Reiling, Dr. Valle, Dr. Pensak, and Dr. Seiden. He noted that the diagnosis of multiple sclerosis was based solely on the MRI and the lumbar puncture; the disease had not yet become "clinically manifest." He noted that neurological examinations were consistently normal, with the exception of a later mild Romberg test and some decreased pin sensation to the left upper extremity. Dr. Loaiza's report states: "No significant abnormalities to support neurological impairment. There is no documentation in support of a cognitive disorder. The claimant's multiple sclerosis is felt to be stable without evidence of active demyelination in follow[-]up MRI studies. No disease modifying agents are being used." He stated that Slaton's balance issues "have been attributed to end stage Meniere's disease." *Id.* at PageID##285-86.

With respect to Slaton's claims of fatigue, Dr. Loaiza stated that "[f]atigue in this clinical setting is really a nonspecific symptom," and "no restrictions and/or limitations are supported from a neurological perspective." Based on his review of the medical records "and from a neurological perspective[,] impairment resulting

9

from fatigue/cognitive difficulties is not supported as of December 30, 2011." *Id.*
at PageID##286-87.

 Dr. Loaiza noted that Dr. Valle's suggestion of cognitive impairment "has not
been supported by physical examination or a more formal neuropsychological
evaluation." *Id.* at PageID#287.  Dr. Loaiza also spoke to Dr. Valle, who admitted
that, despite Slaton's complaints, he had not personally observed any significant
cognitive deficit. *Id.* at PageID#288.

On November 27, 2013, following receipt of Dr. Loaiza's report, Standard
upheld its denial of Slaton's claim.  Doc. #20-2, PageID##430-34.  The letter sent
to Slaton stated:  "While we have carefully considered the information submitted
by both you and Dr. Valle, we do not find evidence to support that your multiple
sclerosis was clinically active, or that there were limitations and restrictions
associated with this condition that would have limited you to part time work as of
January 1, 2012." *Id.* at PageID#431.

Standard cited Dr. Valle's notes from Slaton's January 19, 2012, office
visit, which took place two weeks after Slaton had reduced his work schedule,
allegedly as a result of his recently-diagnosed multiple sclerosis.  Those office
notes indicate that Slaton had "[g]ood attention span and concentration," and his
"neurological assessment is quite normal at this time.  He does not relay any
history convincing for relapsing remitting MS.  I do not find any objective findings
that would suggest a chronic progressive condition." *Id.* at PageID##431-32.

10

Standard explained that just because Slaton had been diagnosed with multiple sclerosis, this did not necessarily mean that he was limited from performing the material duties of his job on a full-time basis. With respect to Slaton's complaints of excessive fatigue and decreased ability to concentrate, Standard pointed out that there was absolutely no mention of any such complaints in Slaton's medical records until March 16, 2012, more than two months after he stopped working full-time. *Id.*

Citing Dr. Loaiza's report, Standard acknowledged that Slaton had been diagnosed with multiple sclerosis, but did not find satisfactory written proof that, as a result of this condition, Slaton was precluded from performing the material duties of his occupation as an attorney on a full-time basis, or from earning more than 80% of his Indexed Predisability Earnings, as of January 1, 2012. Standard therefore upheld the denial of benefits. *Id.* at PageID##430-34.

Having exhausted his administrative remedies under ERISA, Slaton filed suit under 29 U.S.C. § 1132(a)(1)(B), seeking judicial review of Standard's denial of his claim for long-term disability benefits. The parties have filed cross-motions for judgment on the administrative record. Docs. ##26, 28.

## II.     Standard of Review

Under ERISA, a participant or beneficiary of an employee welfare benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). "[A] denial of benefits challenged under § 1132

11

(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If such discretionary authority is granted, the court must uphold the administrator's decision unless it was "arbitrary and capricious." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014). The parties agree that the "arbitrary and capricious" standard applies here, because the Plan grants Standard discretionary authority to interpret the Plan and to determine entitlement to benefits. *See* Doc. #20-1, PageID#244.

The "arbitrary and capricious" standard is highly deferential. "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *McClain*, 740 F.3d at 1065 (quotation omitted). A decision "must be upheld if it results from a deliberate principled reasoning process, and is supported by substantial evidence." *Id.* (internal quotations omitted). Even though the evidence may be sufficient to support a finding of a disability, the decision must be upheld "if there is a reasonable explanation for the administrator's decision." *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010).

## III.    Analysis

Standard maintains that its decision to deny long-term disability benefits resulted from a deliberate principled reasoning process, and is supported by

substantial evidence. It acknowledges that Slaton has been diagnosed with multiple sclerosis, but notes that all medical records show that his disease is stable, inactive, and non-progressive, and that there are no signs of active demyelination. Standard argues that Slaton failed to establish that, as of January 1, 2012, he was "disabled" as a result of that illness.

According to Standard, Slaton's claimed functional limitations are not supported by the medical records. Although Slaton complains of weakness in his legs, and of dizziness and balance problems, all neurologic examinations show that he has normal motor strength in his arms and legs. Doc. #20-1, PageID#309. Dr. Loaiza noted that the chronic complaints of disequilibrium and imbalance appeared to be related to Slaton's end-stage Meniere's disease, and not to the multiple sclerosis. Doc. #20-1, PageID#285. Notably, Slaton now denies that his disability claim is based on his "imbalance/dizzy issues." Doc. #20-1, PageID#302.

Slaton's chief complaints are chronic fatigue and cognitive impairment. Dr. Valle's August 18, 2013, letter, Doc. #20-1, PageID##304-05, confirms that these are both common symptoms of early stages of multiple sclerosis. Nevertheless, Standard maintains that the general statistics cited by Dr. Valle do not constitute satisfactory proof that Slaton is disabled. Dr. Valle's letter fails to adequately establish that, as of January 1, 2012, Slaton exhibited any such symptoms, or that these symptoms rendered him unable to perform with reasonable continuity the material duties of his job as an attorney as of that date. Standard further argues that, because Dr. Valle failed to adequately explain the

13

basis for his opinion that Slaton was unable to work full-time, that opinion was not entitled to a great deal of weight.

Dr. Mass and Dr. Loaiza, board-certified neurologists, found no clinical medical evidence to support a finding that Slaton was functionally disabled due to fatigue, cognitive impairment, or any other symptom of multiple sclerosis. With respect to Slaton's complaints of fatigue, Dr. Loaiza noted that this was "really a nonspecific symptom." Doc. #20-1, PageID#294. Dr. Loaiza also found that Slaton's complaints of cognitive impairment were not supported by any physical examination or formal neuropsychological evaluation. *Id.* Moreover, Dr. Valle's office notes consistently indicate that Slaton's concentration and attention span are normal. When pressed by Dr. Loaiza, Dr. Valle admitted that he had observed no significant cognizant deficit in Slaton. Doc. #20-1, Page ID#288.

In addition, although Slaton claims that his disability rendered him unable to work full-time as of January 1, 2012, Standard notes that there is no indication that he complained of any fatigue or concentration problems until mid-to-late March of 2012, more than two months after he decreased his work hours. In his appeal letter, Slaton claimed that chronic fatigue, loss of energy and inability to concentrate were his main complaints when he visited Dr. Reiling way back on December 6, 2010. Doc. #20-2, PageID#439. However, this is flatly contradicted by Dr. Reiling's notes from that visit, which state "Negative for activity change, appetite change, fatigue and unexpected weight change." There is no mention of

14

any complaints of fatigue, loss of energy, or an inability to concentrate. Doc. #20-2, PageID#340.

Standard urges the Court to find that the decision to deny Slaton's claim for long-term disability benefits was not arbitrary and capricious, because the finding that Slaton's multiple sclerosis did not render him unable to perform with reasonable continuity the material duties of his occupation, or unable to earn more than 80% of his Indexed Predisability Earnings while working in his own occupation, is the result of a deliberate, principled reasoning process, and is supported by substantial evidence.

Slaton, however, urges the Court to find that the decision was arbitrary and capricious for several reasons. First, he argues that Standard was operating under a conflict of interest. Where, as here, the insurer is charged with determining eligibility *and* paying benefits, an inherent conflict of interest exists, because the insurer has a financial incentive to deny claims. Although the Court must consider the presence of such a conflict of interest as a factor in reviewing the decision, this does not alter the applicable standard of review. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292-93 (6th Cir. 2005).

The Supreme Court has held that this factor is to be given greater weight "where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). *See also Judge v. Metropolitan Life Ins.*

15

*Co.*, 710 F.3d 651, 664 (6th Cir. 2013) (holding that this factor is not entitled to as much weight where the claimant offers nothing more than "conclusory allegations of bias"); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007) (holding that "dual status as decisionmaker and as benefits dispenser did not in and of itself lead to an arbitrary and capricious determination of Cooper's claim."). Given that Slaton has presented no evidence that the financial conflict of interest may have improperly influenced Standard's decision, the Court accords little weight to this factor.

Second, Slaton argues that Standard failed to give adequate weight to the opinion of his treating physician, Dr. Valle. In *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003), the Supreme Court held that, although plan administrators cannot arbitrarily reject the opinions of treating physicians, they are not required to give them any special deference.

Here, Standard has given a reasonable explanation for rejecting Dr. Valle's opinion that Slaton is disabled as a result of the multiple sclerosis. In its November 27, 2013, letter upholding the denial of benefits, Standard noted that it had carefully considered the information submitted by Dr. Valle, but did not "find evidence to support that your multiple sclerosis was clinically active, or that there were limitations and restrictions associated with this condition that would have limited you to part time work as of January 1, 2012." Doc. #20-2, PageID#431.

Standard notes that the mere diagnosis of multiple sclerosis does not equate to a finding that Slaton was limited from performing the material duties of his job

16

as an attorney on a full-time basis as of January 1, 2012. Slaton's MRIs show no evidence of active demyelination, and Dr. Loaiza noted that Slaton's neurological examinations were consistently normal until June of 2012, when Dr. Valle documented a mild Romberg test and some decreased pin sensation in the left upper extremity.

Moreover, Dr. Valle's records do not support a finding that Slaton was suffering from fatigue or decreased concentration as of January 1, 2012. Standard points out that office notes from January 19, 2012, indicated that Slaton had "[g]ood attention span and concentration," that his "neurological assessment is quite normal at this time," and that there were no "objective findings that would suggest a chronic progressive condition." *Id.* at PageID##431-32. According to the medical records, it was not until March of 2012, that Slaton first complained of fatigue or inability to work effectively for a full day. In the Court's view, Standard has given a reasonable explanation for rejecting Dr. Valle's opinion.

Third, Slaton argues that Standard failed to give adequate weight to his subjective complaints of fatigue and decreased concentration. He notes that his diagnosis of multiple sclerosis is clinically supported by the results of his MRIs and his lumbar puncture and that, as Dr. Valle said, his self-reported symptoms of fatigue and cognitive impairment are common manifestations of this disease. Slaton maintains that, under the circumstances presented here, Standard acted in an arbitrary and capricious manner when it denied his claim based on a lack of objective medical evidence to support his claimed limitations.

17

The Sixth Circuit has held that it is not unreasonable or irrational for an administrator to require objective medical evidence to support a claim of disability. *Cooper*, 486 F.3d at 166. Accordingly, when a disability plan specifically requires that claims be supported by objective medical documentation, that requirement is generally upheld. Nevertheless, it may be arbitrary and capricious for the plan administrator to impose an "objective medical evidence" requirement when the plan itself does not. *See, e.g., Glenn v. MetLife*, 461 F.3d 660, 673 (6th Cir. 2006); *Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 395 (6th Cir. 2009); *Pelchat v. Unum Life Ins. Co. of Am.,* No. 3:02-cv-7282, 2003 WL 21105075, at *11 (N.D. Ohio May 12, 2003).

Here, Standard's long-term disability Plan states that "[s]atisfactory written proof of loss in connection with a claim for benefits must be provided to Standard at the expense of the person filing a claim." Doc. #20-1, PageID#239. While the Plan does not define what constitutes "satisfactory written proof of loss," it does not specifically exclude consideration of subjective or self-reported symptoms.

Slaton notes that when a claimant has subjective complaints of disabling symptoms, such as pain or fatigue, the extent of which is not capable of proof by objective medical evidence, the plan administrator must necessarily make a credibility determination. He cites to *Tanner v. Nationwide Mutual Insurance Co.*, 804 F. Supp.2d 601, 613-14 (S.D. Ohio 2011), in which the court held that a plan administrator cannot rely solely on the absence of objective medical evidence to justify denying a claim for benefits. The court pointed out that "it is one thing to

18

insist that some objective evidence of a potentially disabling condition be submitted . . . and another to insist that the objective evidence be sufficient to resolve all of the issues in the case, including the amount of pain being experienced by the claimant." *Id.* at 613. Accordingly, the administrator must consider all of the evidence that either supports or detracts from the claimant's subjective complaints. *Id.* at 613-14.

Slaton argues that, in reviewing his subjective complaints of fatigue and decreased concentration, Standard should have considered the fact that he had no reason to lie about the extent of his disability. He was happy, productive, and well-respected in the legal community. In addition, he was only in his early 50s, not yet ready to retire. Because he still had children at home, he needed to continue to work full-time. Moreover, he had participated in the Plan for ten years without filing a claim. Slaton further argues that, if Standard disbelieved his self-reported symptoms, it should have conducted an independent medical examination, as the Plan permitted it to do. *See* Doc. #20-1, PageID#240. Instead, it conducted a file-only review.

The Sixth Circuit has repeatedly held that an administrator's decision to conduct a file-only review is not inherently objectionable, but "may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert,* 409 F.3d at 295. *See also Glenn*, 461 F.3d at 671 (holding that a file-only review is not *per se* unreasonable, but one factor to be considered).

19

In *Judge*, the Sixth Circuit held that file-only reviews are problematic where the file reviewer makes an adverse credibility determination without a physical examination. 710 F.3d at 663 (citing *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 555 (6th Cir. 2008)). *See also Helfman*, 573 F.3d at 395-96 ("[c]redibility determinations made without the benefit of a physical examination support a conclusion that the decision was arbitrary.").

In the Court's view, Slaton's reliance on these cases is misplaced. He claims that Standard should have given more weight to his subjective complaints of fatigue and decreased cognitive ability, particularly since these symptoms are difficult to quantify with objective medical evidence. He further claims that, if the administrator did not find his subjective complaints to be credible, it should have ordered an independent medical examination instead of relying on a file-only review.

The problem is this. Slaton needed to submit satisfactory written proof that, *as of January 1, 2012*—the date he claims that he became unable to work full-time — he was "disabled" as that term is defined in the Plan. Although he claims that chronic fatigue and decreased ability to concentrate rendered him unable to work full-time as of that date, there is absolutely *no evidence* in his medical records that he ever complained about *any* fatigue or decreased ability to concentrate before March 16, 2012, more than two months later. Therefore, this is not a question of whether his subjective complaints were *credible*. As Standard points out, as of January 1, 2012, he had never even *made* such complaints. This

20

fact distinguishes Slaton's case from the cases cited above. Without any documentation of such subjective complaints in the record as of the claimed date of disability, it cannot be said that Standard acted in an arbitrary and capricious manner in failing to give those complaints more weight, or in failing to order an independent medical examination to better assess Slaton's credibility.

If there were any evidence that Slaton actually experienced fatigue or decreased cognitive ability prior to January 1, 2012, perhaps the outcome of this case would be different. However, under the circumstances presented here, the Court finds that Standard's decision to deny long-term disability benefits was not arbitrary or capricious.

Although Slaton was diagnosed with multiple sclerosis early in January of 2012, that disease was not yet "clinically active" on January 1, 2012. Moreover, there is no evidence that Slaton was experiencing fatigue or decreased cognitive ability as of that date. As previously noted, Dr. Valle's notes from the January 19, 2012, office visit actually indicate that Slaton has "[g]ood attention span and concentration" and his "neurological assessment is quite normal at this time." [2] On that date, there were no "objective findings that would suggest a chronic progressive condition." Doc. #20-2, PageID#390-91.

_____

[2] The Court also notes that, even though Slaton reported intermittent poor focus in March of 2012, subsequent medical records from June and December of 2012 again indicate that his concentration and attention span are normal. Doc. #20-2, PageID##380, 383. In addition, Dr. Valle admitted that he had not observed any significant cognitive impairment. Doc. #20-1, PageID#288.

In upholding its decision to deny Slaton's claim for long-term disability benefits, Standard indicated that it had considered all of the information submitted, but found no "evidence to support that your multiple sclerosis was clinically active, or that there were limitations and restrictions associated with this condition that would have limited you to part time work as of January 1, 2012." Doc. #20-2, PageID#431. The Court finds that Standard has offered a reasoned explanation for rejecting Dr. Valle's opinion, and for denying Slaton's claim for long-term disability benefits. Standard's determination resulted from "a deliberate principled reasoning process, and is supported by substantial evidence." *McClain*, 740 F.3d at 1065 (quotation omitted). Accordingly, the Court must uphold it.[3]

## IV. Conclusion

For the reasons set forth above, the Court concludes that Defendant did not act in an arbitrary and capricious manner in denying Plaintiff's claim for long-term disability benefits. Accordingly, the Court OVERRULES Plaintiff's Motion for Judgment on the Administrative Record, Doc. #24, and SUSTAINS Defendant's Motion for Entry of Judgment on the Administrative Record, Doc. #26.

_____

[3] Standard argues that, if the Court finds that the denial of benefits was arbitrary and capricious, no benefits should be awarded beyond the initial 24-month period. Given that the Court is upholding the denial of benefits, it need not address this alternative argument.

Judgment will be entered in favor of Defendant and against Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: January 26, 2016

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

23